FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jun 02, 2021

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| KIMBERLY O.,<br><br>                              Plaintiff,<br><br>    v.<br><br>ANDREW M. SAUL,<br>COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>                              Defendant. | NO:  1:20-CV-03042-FVS<br><br>ORDER GRANTING DEFENDANT'S<br>MOTION FOR SUMMARY<br>JUDGMENT AND DENYING<br>PLAINTIFF'S MOTION FOR<br>SUMMARY JUDGMENT |

BEFORE THE COURT are the parties' cross motions for summary

judgment.  ECF Nos. 12 and 14.  This matter was submitted for consideration

without oral argument.  The Plaintiff is represented by Attorney Cory J. Brandt.

The Defendant is represented by Special Assistant United States Attorney Justin L.

Martin.  The Court has reviewed the administrative record, the parties' completed

briefing, and is fully informed.  For the reasons discussed below, the Court

**GRANTS** Defendant's Motion for Summary Judgment, ECF No. 14, and **DENIES**

Plaintiff's Motion for Summary Judgment, ECF No. 12.

ORDER ~ 1

**JURISDICTION**

Plaintiff Kimberly O.[1] protectively filed for disability insurance benefits on March 6, 2014, alleging a disability onset date of October 1, 2013.  Tr. 138-47. Benefits were denied initially, Tr. 81-87, and upon reconsideration, Tr. 89-93. Plaintiff requested a hearing before an administrative law judge ("ALJ"), which was held on May 18, 2016.  Tr. 30-53.  Plaintiff was represented by counsel and testified at the hearing.  *Id*.  The ALJ denied benefits, Tr. 12-29, and the Appeals Council denied review.  Tr. 1.  On March 5, 2019, the United States District Court for the Eastern District of Washington granted Plaintiff's Motion for Summary Judgment, and remanded the case for further proceedings.  Tr. 619-34.  On March 24, 2019, the Appeals Council vacated the ALJ's finding, and remanded for further administrative proceedings.  Tr. 448-51.  On January 3, 2020, Plaintiff appeared for an additional hearing before the ALJ.  Tr. 563-91.  The ALJ denied benefits. Tr. 511-37.  The matter is now before this court pursuant to 42 U.S.C. § 405(g).

**BACKGROUND**

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner. Only the most pertinent facts are summarized here.

---

[1] In the interest of protecting Plaintiff's privacy, the Court will use Plaintiff's first name and last initial.

ORDER ~ 2

Plaintiff was 55 years old at the time of the second hearing.  *See* Tr. 140. She completed high school and one year of college.  Tr. 47-48, 232.  She lived with her husband and teenage son.  Tr. 35.  Plaintiff has work history as an insurance sales agent and insurance clerk.  Tr. 35-38, 49, 585.  She testified that she could not go back to work because of her vertigo.  Tr. 38.  Specifically, Plaintiff testified that when her vertigo "kicks in" she cannot get out of bed for up to a week, then it takes a few days to get her balance back, and during that time she cannot turn fast or bend down.  Tr. 41, 574-75.  At the first hearing she reported that she has vertigo episodes once a month, and previously had episodes up to several times per week.  Tr. 42-43.

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion."  *Id*. at 1159 (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance."  *Id.* (quotation and citation omitted).  In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation.  *Id.*

ORDER ~ 3

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner.  "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation."  *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).  Further, a district court will not reverse an ALJ's decision on account of an error that is harmless.  *Id*.  An error is harmless where it is "inconsequential to the [ALJ's] ultimate nondisability determination."  *Id*. (quotation and citation omitted).  The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed.  *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act.  First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A).  Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. §

404.1520(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's

work activity.  20 C.F.R. § 404.1520(a)(4)(i).  If the claimant is engaged in

"substantial gainful activity," the Commissioner must find that the claimant is not

disabled.  20 C.F.R. § 404.1520(b).

If the claimant is not engaged in substantial gainful activity, the analysis

proceeds to step two.  At this step, the Commissioner considers the severity of the

claimant's impairment.  20 C.F.R. § 404.1520(a)(4)(ii).  If the claimant suffers

from "any impairment or combination of impairments which significantly limits

[his or her] physical or mental ability to do basic work activities," the analysis

proceeds to step three.  20 C.F.R. § 404.1520(c).  If the claimant's impairment

does not satisfy this severity threshold, however, the Commissioner must find that

the claimant is not disabled.  20 C.F.R. § 404.1520(c).

At step three, the Commissioner compares the claimant's impairment to

severe impairments recognized by the Commissioner to be so severe as to preclude

a person from engaging in substantial gainful activity.  20 C.F.R. §

404.1520(a)(4)(iii).  If the impairment is as severe or more severe than one of the

enumerated impairments, the Commissioner must find the claimant disabled and

award benefits.  20 C.F.R. § 404.1520(d).

If the severity of the claimant's impairment does not meet or exceed the

severity of the enumerated impairments, the Commissioner must pause to assess

the claimant's "residual functional capacity."  Residual functional capacity (RFC),

defined generally as the claimant's ability to perform physical and mental work

ORDER ~ 5

activities on a sustained basis despite his or her limitations, 20 C.F.R. §

404.1545(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's

RFC, the claimant is capable of performing work that he or she has performed in

the past (past relevant work). 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is

capable of performing past relevant work, the Commissioner must find that the

claimant is not disabled. 20 C.F.R. § 404.1520(f). If the claimant is incapable of

performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's

RFC, the claimant is capable of performing other work in the national economy.

20 C.F.R. § 404.1520(a)(4)(v). In making this determination, the Commissioner

must also consider vocational factors such as the claimant's age, education and

past work experience. 20 C.F.R. § 404.1520(a)(4)(v). If the claimant is capable of

adjusting to other work, the Commissioner must find that the claimant is not

disabled. 20 C.F.R. § 404.1520(g)(1). If the claimant is not capable of adjusting to

other work, analysis concludes with a finding that the claimant is disabled and is

therefore entitled to benefits. 20 C.F.R. § 404.1520(g)(1).

The claimant bears the burden of proof at steps one through four above.

*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to

step five, the burden shifts to the Commissioner to establish that (1) the claimant is

capable of performing other work; and (2) such work "exists in significant

numbers in the national economy." 20 C.F.R. § 404.1560(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

At step one, the ALJ found that Plaintiff did not engage in substantial gainful during the period from her alleged onset date of October 1, 2013 through her date last insured of December 31, 2016. Tr. 517. At step two, the ALJ found that, through the date last insured, Plaintiff had the following severe impairments: degenerative disease of the lumbar spine, vertigo, and obesity. Tr. 518. At step three, the ALJ found that, through the date last insured, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. Tr. 521. The ALJ then found that, through the date last insured, Plaintiff had the RFC

> to perform light work as defined in 20 CFR 404.1567(b) except the following. She could lift or carry up to 20 pounds occasionally and up to 10 pounds frequently, stand or walk for approximately 6 hours and sit for approximately 6 hours per 8-hour workday with normal breaks. She could occasionally climb ramps or stairs of one flight. She could never climb ladders, ropes, or scaffolds. She could occasionally balance, stoop, kneel, crouch, and crawl. She must avoid concentrated exposure to excessive vibration and excessive noises. She must avoid moderate exposure to workplace hazards, such as working with dangerous machinery or on uneven terrain and no working at unprotected heights. She could frequently handle, finger, and feel.

Tr. 522. At step four, the ALJ found that Plaintiff was capable of performing past relevant work as an insurance sales agent and insurance clerk. Tr. 529. On that basis, the ALJ concluded that Plaintiff was not under a disability, as defined in the

Social Security Act, at any time from October 1, 2013, the alleged onset date, through December 31, 2016, the date last insured.  Tr. 530.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her disability insurance benefits under Title II of the Social Security Act.  ECF No. 12.  Plaintiff raises the following issues for this Court's review:

1.  Whether the ALJ properly weighed the medical opinion evidence;

2.  Whether the ALJ failed to fully develop the record;

3.  Whether the ALJ properly considered Plaintiff's symptom claims;

4.  Whether the ALJ properly considered the lay witness evidence; and

5.  Whether the ALJ erred at step four.

## DISCUSSION

### A. Medical Opinions

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari,* 246 F.3d 1195, 1201–02 (9th Cir.2001) (citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's.  *Id.*  If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing

ORDER ~ 8

reasons that are supported by substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir.2005).  Conversely, "[i]f a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* (citing *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995)). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.,* 554 F.3d 1219, 1228 (9th Cir. 2009) (quotation and citation omitted).

The opinion of an acceptable medical source such as a physician or psychologist is generally given more weight than that of an "other source." *See* SSR 06-03p (Aug. 9, 2006), *available at* 2006 WL 2329939 at *2; 20 C.F.R. § 416.927(a). "Other sources" include nurse practitioners, physician assistants, therapists, teachers, social workers, and other non-medical sources.  20 C.F.R. §§ 404.1513(d), 416.913(d).  The ALJ need only provide "germane reasons" for disregarding an "other source" opinion. *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012).  However, the ALJ is required to "consider observations by nonmedical sources as to how an impairment affects a claimant's ability to work." *Sprague v. Bowen,* 812 F.2d 1226, 1232 (9th Cir. 1987).

Plaintiff argues the ALJ erroneously considered the opinions of Plaintiff's treating providers Paul Tompkins, M.D. and Salvador Lopez, PA-C.  ECF No. 12 at 10-15.

ORDER ~ 9

1      *1. Paul Tompkins, M.D.*

2      In October 2014, Plaintiff's treating physician, Dr. Paul Tompkins, wrote a

3    letter to the Social Security Administration asking that they reconsider the denial

4    of Plaintiff's claim for disability benefits.  Tr. 483.  Dr. Tompkins indicated that

5    due to "recurrent significant vertigo," Plaintiff could work at most 2-3 hours, 2-3

6    times per week; and "[b]ecause of the intermittent nature of this problem, neither

7    she nor her employers can count on/schedule her work."  Tr. 483.  In November

8    2014, Dr. Tompkins opined that due to benign positional vertigo, Plaintiff would

9    have to lie down intermittently for up to several hours; if she attempted to work a

10   40-hour per week schedule it was more probable than not that she would miss 4 or

11   more days of work per month; and she could lift 20 pounds maximum and

12   frequently lift and/or carry up to 10 pounds.  Tr. 312-13.  Then, in December 2014,

13   Dr. Tompkins similarly opined that Plaintiff would need to lie down intermittently

14   "without warning"; if she attempted to work a 40-hour per week schedule it was

15   more probable than not that she would miss 4 or more days of work per month; and

16   she was able to perform light work.  Tr. 484-85.

17     The ALJ gave significant weight to Dr. Tompkins' opinion that Plaintiff

18   could perform at a light exertional level because it was consistent with the record

19   as a whole, conservative and infrequent treatment, benign physical examination

20   results, improvement with treatment, and her activities.  Tr. 527-28.  However, the

21   ALJ gave weight to Dr. Tompkins' opinions

only to the extent of [the light exertional limitation because Dr. Tompkins'] opinions about the frequency of the vertigo, severity of the symptoms, the need to lie down or elevate her legs during the day, and that [Plaintiff] would miss an average of four or more days per month, are based heavily on [Plaintiff's] self-reported symptoms and limitations, which are not fully supported by the longitud[inal] medical record, including objective findings, [Plaintiff's] relatively conservative and infrequent course of treatment, her rather benign presentation at appointments and at the physical examinations, the statements of improvement of back pain and vertigo with treatment, and no complications from diabetes, and [Plaintiff's] reported activities of daily living and work activities through the date last insured.

Tr. 528 (internal citations omitted).

Plaintiff argues that the ALJ's reasoning is "not valid" for several reasons. ECF No. 12 at 11-14.   As an initial matter, Plaintiff argues that "[t]o summarily reject the limitations assessed by Dr. Tompkins, claiming they were based only on subjective reports, is to presume incompetence on the part of the provider."  ECF No. 12 at 11-12.  However, Plaintiff fails to cite legal authority or evidence from the longitudinal record to support this assertion.  Rather, it is well-settled in the Ninth Circuit that an ALJ may reject a physician's opinion if it is based "to a large extent" on Plaintiff's self-reports that have been properly discounted. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).  And in the instant case, as discussed below, the ALJ additionally supported this finding by noting that Plaintiff's self-reported symptoms were not supported by the longitudinal medical record, including Dr. Tompkins' own treatment notes.  Tr. 528.

Next, Plaintiff generally argues, with minimal citation to the record, that (1) her vertigo symptoms were intermittent and "[s]he was only able to meet with providers on good days, which account for the benign findings in the record"; (2)

ORDER ~ 11

she received conservative treatment "not because her conditions did not warrant more, but because there were no other options"; and (3) she did not experience any long-term improvement that would enable her to engage in substantial gainful employment.  ECF No. 12 at 12-13 (citing Tr. 320, 322 (reporting vertigo "is calming down" but she still has "episodes" every week), 410 ("experiencing a degree of disequilibrium"), 483 (citing Dr. Tompkins' finding that "medically, no one knows of anything more to do"), 926 (2018 treatment record noting Plaintiff's 7-year history of vertigo that "over the last 3 years has worsened")).  However, the consistency of a medical opinion with the record as a whole is a relevant factor in the ALJ's evaluation of a medical opinion.  *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007); *see also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (an ALJ may discount an opinion that is conclusory, brief, and unsupported by the record as a whole, or by objective medical findings).

Here, in support of her finding, the ALJ cites consistently normal objective test results, benign physical examination results, conservative and infrequent treatment, and statements of improvement with treatment throughout the relevant adjudicatory period, including Dr. Tompkins' own treatment notes.  *See Tommasetti*, 533 F.3d at 1041(it is proper for an ALJ to reject a medical opinion if it is inconsistent with the provider's own treatment notes).  This evidence includes July 2013 imaging that showed only mild degenerative changes of the lumbar spine; normal brain MRI results in January 2011; normal or steady gait; normal/near normal range of motion of the lumbar spine, cervical spine, shoulders,

ORDER ~ 12

upper extremities, and lower extremities including bilateral knees; normal/near normal motor strength of the lumbar spine, lower extremities, and upper extremities; intact coordination and deep tendon reflexes; intact sensation of the extremities; treatment notes observing that Plaintiff was comfortable and in no acute distress; normal respiratory function; no complications from diabetes; and referral for physical therapy.  Tr. 317, 319-20, 322-23, 325, 327, 331, 334, 352, 379, 384-85, 389, 391, 407-10, 420-21, 425-27, 433-34, 445, 449, 476-77, 489, 492-93, 495, 503, 506-07, 509, 527-28, 841.

In addition, despite Plaintiff's argument to the contrary, it was proper for the ALJ to consider the infrequency of Plaintiff's treatment for vertigo during the relevant adjudicatory period when weighing Dr. Tompkins' opinions, regardless of Dr. Tompkins' 2014 statement that Plaintiff had a "poor prognosis" as to her "persistent vertigo."  Tr. 525; *see* 20 C.F.R. § 404.1527(c)(i) (ALJ considers "frequency of examination" in weighing medical opinions).  And, as noted in the ALJ's decision, despite her claims of significant back and neck pain, Plaintiff received only routine and conservative treatment for these alleged impairments, and she did not undergo surgery during the relevant adjudicatory period.  Tr. 497, 525.  Thus, regardless of evidence in the record that may be considered more favorable to Plaintiff, it was reasonable for the ALJ to find that the overall record, including objective evidence, physical examination results, improvement with treatment, and infrequent treatment records, was inconsistent with the severity of the limitations assessed by Dr. Tompkins.  *See Burch v. Barnhart*, 400 F.3d 676,

ORDER ~ 13

679 (9th Cir. 2005) ("[W]here evidence is susceptible to more than one rational interpretation, it is the [Commissioner's] conclusion that must be upheld.").

Finally, the ALJ found the severe limitations assessed by Dr. Tompkins were inconsistent with Plaintiff's reported activities of daily living and work activities through the date last insured. Tr. 528. An ALJ may discount an opinion that is inconsistent with a claimant's reported functioning. *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999). In support of this finding, the ALJ noted that Plaintiff worked until July 2014, prepared simple meals, did light housework, fed her pets, watched her grandson weekly, went to church, and shopped in stores weekly. Tr. 528 (citing Tr. 44-46, 210, 221, 247-48, 260-65, 377). The ALJ additionally noted that Dr. Tompkins did not restrict Plaintiff from driving during the relevant adjudicatory period, and found that "[if Plaintiff's] vertigo were as severe as opined in February 2014, October 2014, and December 2014, Dr. Thompkins would have restricted [Plaintiff] from driving." Tr. 528.

Plaintiff argues that the activities listed by the ALJ are not inconsistent with Dr. Tompkins' opinion as to Plaintiff's need to lie down intermittently and miss up to 4 days of work in a full-time work week because they do not demand more than a light level of exertion, and "fit within [Plaintiff's] functional abilities *on a good day*." ECF No. 12 at 13-14 (emphasis in original). However, the Court finds it was reasonable for the ALJ to find the severity of Dr. Tompkins' opinions was inconsistent with the lack of restriction on her driving despite the aforementioned "intermittent" and unpredictable vertigo, her ability to continue working for a

ORDER ~ 14

portion of the relevant adjudicatory period, and her ability to take care of her grandson and do weekly errands. *See Tommasetti,* 533 F.3d at 1040 (ALJ may draw inferences logically flowing from evidence); *Magallanes v. Bowen,* 881 F.2d 747, 755 (9th Cir. 1989). Moreover, even assuming the ALJ erred in considering Plaintiff's activities during the relevant adjudicatory period as a reason to discount Dr. Tompkins' opinions, any error is harmless because, as discussed above, the ALJ's ultimate rejection of Dr. Tompkins' opinions was supported by substantial evidence. *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008).

For all of these reasons, the Court finds no error in the ALJ's rejection of Dr. Tompkins' opinions to the extent they are inconsistent with the overall medical record. *See Burch*, 400 F.3d at 679 (ALJ's conclusion must be upheld where evidence is susceptible to more than one rational interpretation).

### 2. *Salvador Lopez, PA-C*

In September 2019, treating provider, Salvador Lopez, PA-C, completed a "medical report." Tr. 1063-65. Mr. Lopez opined that Plaintiff was able to stand for a maximum of about 2 hours in an 8-hour day, sit less than 2 hours during an 8-hour day, sit for 15 minutes before changing positions, stand for 10 minutes before changing positions, lift and carry less than 10 pounds frequently and occasionally, would be off task more than 50% of the work day due to her impairments, would need to lie down at unpredictable intervals during an 8-hour work shift, and would miss an average of 4 or more days of work per month if she attempted to work a

ORDER ~ 15

40-hour per week schedule.  Tr. 1063-64.  Mr. Lopez also opined that Plaintiff was limited to less than sedentary work.  Tr. 1064.  The ALJ gave Mr. Lopez's opinion little weight for several reasons.  Tr. 528.

First, the ALJ noted the opinion "was formed almost three years after the date last insured and therefore do[es] not reflect [Plaintiff's] physical functioning during the relevant period of this decision and therefore [has] little probative value."  Tr. 528.  In general, a statement of disability made outside the relevant time period may be of limited probative value.  *See Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010).  Here, as noted by the ALJ, Mr. Lopez's opinion is dated December 30, 2019, three years after Plaintiff's date last insured of December 31, 2016.  Tr. 1065.  However, the report specifically notes that it addresses Plaintiff's ability to perform activities during the relevant adjudicatory period, namely, from 2013 through the date of the opinion in 2019.  Tr. 1063.  Moreover, while it was reasonable for the ALJ to note that Mr. Lopez's 2019 opinion was offered well after the period for which Plaintiff is attempting to establish disability, it is well-settled in the Ninth Circuit that an opinion cannot be disregarded solely on this basis.  *See Smith v. Bowen*, 849 F.2d 1222, 1225 (9th Cir. 1988) (reports containing observations made after the period of disability are relevant to assess disability and should not be disregarded solely on that basis).

Regardless, the ALJ offered additional germane reasons for rejecting Mr. Lopez's opinion.  *See Carmickle*, 533 F.3d at 1162-63.  First, the ALJ noted that the record as a whole does not support the opined "extreme limitations" opined by

ORDER ~ 16

Mr. Lopez.  Tr. 528.  As above, the consistency of a medical opinion with the record as a whole is a relevant factor in the ALJ's evaluation of a medical opinion. *Orn*, 495 F.3d at 631.  Plaintiff generally argues, without specific citation to the record, that Mr. Lopez's opinion is supported by "evidence in the record, including Dr. Tompkins improperly rejected opinion."  ECF No. 12 at 14.  However, as discussed in detail above, the ALJ's consideration of Dr. Tompkins' opinions was free of error and supported by substantial evidence.  Moreover, as with Dr. Tompkins' opinion, it was reasonable for the ALJ to find that the record as a whole, including normal objective findings and benign physical examinations, does not support the severity of the limitations opined by Mr. Lopez, which includes a finding that Plaintiff would be off task more than 50% throughout a workday, and limited her to even "less than sedentary work."  *See* Tr. 1064.  This was a germane reason for the ALJ to reject Mr. Lopez's opinion.

Second, the ALJ found that Mr. Lopez "did not provide much, if any, explanation for the opined limitations in the form checkboxes."  Tr. 528.  An ALJ may permissibly reject check -box reports that do not contain any explanation of the bases for their conclusions.  *See Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996); *see also Batson*, 359 F.3d at 1195 (an ALJ may discount an opinion that is conclusory, brief, and unsupported by the record as a whole, or by objective medical findings).  Plaintiff argues that "the treatment notes from Mr. Lopez's clinic serve as a basis for his opinion."  ECF No. 12 at 14 (citing Tr. 978-1004).  The Ninth Circuit has held that when a treating physician's check-box opinion was

ORDER ~ 17

"based on significant experience with [Plaintiff] and supported by numerous records, [it was] therefore entitled to weight that an otherwise unsupported and unexplained check-box form would not merit." *See Garrison v. Colvin*, 759 F.3d 995, 1014 n.17 (9th Cir. 2014); *see also Trevizo v. Berryhill*, 871 F.3d 664, 667 n.4 (9th Cir. 2017) ("[T]here is no authority that a 'check-the-box' form is any less reliable than any other type of form"). However, the evidence cited by Plaintiff contains only five treatment notes indicating Mr. Lopez was the treating provider, over the course of eight months, which does not rise to the level of a "significant" experience with Plaintiff that "was supported by numerous records." *See* 978-1004. Moreover, the Court's review of the cited treatment notes does not provide any arguable explanation of the bases for the severe limitations assessed by Mr. Lopez in his check-box opinion. *Crane*, 76 F.3d at 253. This was a germane reason for the ALJ to reject Mr. Lopez's opinion.

## B. Duty to Develop the Record

The ALJ has an independent duty to fully and fairly develop a record in order to make a fair determination as to disability, even where, as here, the claimant is represented by counsel. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001). "Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to 'conduct an appropriate inquiry.'" *Id.* (quoting *Smolen v. Chater,* 80 F.3d 1273, 1288 (9th Cir.1996)). Here, the United States District Court ordered the ALJ to "further develop the record by directing Plaintiff to undergo a new

consultative examination with respect to her physical capacity."  Tr. 630.

Accordingly, on October 10, 2019, Dr. William Drenguis, M.D. completed a

physical evaluation of Plaintiff and opined that she could stand and walk for at

least 6 hours, sit for at least 6 hours, lift and carry less than 10 pounds occasionally

and frequently because she had recent anterior cervical fusion surgery, and could

occasionally climb, balance, stoop, kneel, crouch, and crawl due to her vertigo and

recent anterior cervical fusion.  Tr. 844.  Dr. Drenguis also noted that Plaintiff

would be "re-evaluated" in November 2019 to review restrictions based on her

recent cervical fusion surgery.  *Id*.  Plaintiff argues the ALJ failed to meet her duty

to fully and fairly develop the record because "the record does not contain a re-

evaluation, and the ALJ's decision was thus based on an incomplete consultative

evaluation."  ECF No. 12 at 15.

However, Dr. Drenguis submitted a complete functional assessment, and

Plaintiff fails to identify any limitations assessed by Dr. Drenguis that were not

properly accounted for in the assessed RFC, even with "surgical restriction" due to

her "recent anterior cervical fusion."  *Molina*, 674 F.3d at 1115 (error is harmless

"where it is inconsequential to the [ALJ's] ultimate nondisability determination).

Additionally, as noted by Defendant, "the temporary exertional restrictions

stemming from Plaintiff's July 2019 [surgery] do not shed any light on Plaintiff's

functioning during the three-year relevant period between October 2013 (alleged

onset date) and December 2016 (the date last insured)."  ECF No. 14 at 12.  "[A]n

ALJ is not required to order every medical evaluation that could conceivably shed

light on a claimant's condition, but rather just those that would resolve ambiguities or inadequacies in the record." *Lloyd v. Astrue*, No. C-11-4902-EMC, 2013 WL 503389, at *5 (N.D. Cal. Feb. 8, 2013) (*citing Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001)).  Finally, it is Plaintiff's duty to prove that she is disabled; and this burden cannot be shifted to the ALJ simply by virtue of the ALJ's duty to develop the record.  ECF No. 13 at 12 (citing *Mayes*, 276 F.3d at 459-60).

Here, the ALJ reviewed the entire 1,000-page record, including the medical opinion evidence from the relevant adjudicatory period, and identified sufficient evidence in the record as a whole for a properly supported disability determination. "The ALJ is responsible for determining credibility, resolving conflicts in the medical testimony, and for resolving ambiguities.  [The Court] must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation." *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 1995); *see also Bayliss,* 427 F.3d at 1217 (finding the ALJ did not have a duty to further develop the record because "the ALJ, with support in the record, found the evidence adequate to make a determination regarding [Plaintiff's] disability").  The ALJ did not find, and the Court is unable to discern, any inadequacy or ambiguity that did not allow for proper evaluation of the record as a whole.  Thus, the ALJ did not err in failing to further develop the record in this case.

**C. Plaintiff's Symptom Claims**

An ALJ engages in a two-step analysis when evaluating a claimant's testimony regarding subjective pain or symptoms.  "First, the ALJ must determine

ORDER ~ 20

whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (internal quotation marks omitted). "The claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom he has alleged; he need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id*. (quoting *Lester*, 81 F.3d at 834); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison*, 759 F.3d at 1015 (quoting *Moore v. Comm'r of Soc. Sec. Admin*., 278 F.3d 920, 924 (9th Cir. 2002)).

Here, the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however,

ORDER ~ 21

Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record" for several reasons.  Tr. 523.

### 1. Lack of Objective Medical Evidence

First, the ALJ found that the objective findings and Plaintiff's "usually benign presentation" through the date last insured appeared "incompatible with the reported frequency and severity of her symptoms and limitations."  Tr. 524.  An ALJ may not discredit a claimant's pain testimony and deny benefits solely because the degree of pain alleged is not supported by objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989).  However, the medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects.  *Rollins*, 261 F.3d at 857; 20 C.F.R. § 404.1529(c)(2).  Here, the ALJ set out the medical evidence contradicting Plaintiff's claims of disabling limitations, including: July 2013 imaging that indicated only mild degenerative changes of the lumbar spine; a January 2011 MRI scan that showed normal results; and consistent examination findings of no acute distress, normal and steady gait, normal range of motion of the lumbar and cervical spine, normal range of motion of upper extremities, normal motor strength of upper and lower extremities aside from some reduced grip strength in the right hand, intact coordination and deep tendon reflexes, intact sensation, lack of complications from diabetes, and normal respiratory function without distress.  Tr.

ORDER ~ 22

1  524 (citing Tr. 316-17, 319-20, 323, 327-28, 331, 334, 352, 391, 407-09, 420-21,

2  425-27, 433-34, 449, 476-77, 479, 495, 503, 505-07).

3        Plaintiff generally argues, without specific citation to the record or legal

4  authority, that this reasoning is "not valid" because these examinations took place

5  on "good days" as opposed to "bad days" when Plaintiff was "unable to even walk.

6  It is unreasonable to expect [Plaintiff] to have attended medical appointments on

7  these days." ECF No. 12 at 17.  Plaintiff also cited physical therapy treatment

8  records from October 2013 through March 2014 that noted tightness and

9  tenderness in Plaintiff's neck.  ECF No. 12 at 17 (citing Tr. 357-71, 376-82).

10  However, regardless of evidence that could be considered favorable to Plaintiff, it

11  was reasonable for the ALJ to find the severity of Plaintiff's symptom claims was

12  inconsistent with benign objective and clinical findings across the relevant

13  adjudicatory period.  Tr. 522-24.  "[W]here evidence is susceptible to more than

14  one rational interpretation, it is the [Commissioner's] conclusion that must be

15  upheld." *Burch*, 400 F.3d at 679.  The lack of corroboration of Plaintiff's claimed

16  limitations by the objective medical evidence was a clear, convincing, and

17  unchallenged reason for the ALJ to discount Plaintiff's symptom claims.

18        *2.  Improvement*

19        Second, the ALJ noted that Plaintiff's statements regarding improvement in

20  her symptoms, and observations of improvement by her treating providers, "further

21  show that her symptoms were not as severe as alleged." Tr. 525.  A favorable

response to treatment can undermine a claimant's complaints of debilitating pain or

ORDER ~ 23

other severe limitations.  *See Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir.

2008); *see Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir.

2006) (conditions effectively controlled with medication are not disabling for

purposes of determining eligibility for benefits).  In support of this finding, the

ALJ cites Plaintiff's report in March 2013 that her vertigo symptoms were "much

improved" with treatment; treatment notes in March 2013 indicating that her

symptoms "seemed to be resolved" with the use of low dose Alprazolam; reports in

August 2013 that Plaintiff reported less vertigo and improved her strength; a report

in November 2013 that she had dizzy spells in the morning but overall she was

"pretty good" and hired a personal trainer; reports in December 2013 of minimal

dizziness and that her vertigo was "calming down"; Plaintiff's report in February

2014 that she was vertigo free for almost three weeks and had returned to work;

and Dr. Tompkins' January 2016 treatment note that he "was not going to insist

[that Plaintiff] stop driving a car because [Plaintiff] had had only one episode of

vertigo while driving."  Tr. 525 (citing Tr. 322-23, 328, 361, 367, 375-77, 381,

409-10, 491).

Plaintiff argues that this reasoning is "not valid" because Plaintiff

experienced periods of both improved and worsened symptoms, "as would be

expected with the nature of her unpredictable and elusive condition," but she did

not experience any long-term improvement.  ECF No. 12 at 18.  Elsewhere in her

briefing, Plaintiff cites evidence that would support this argument, including one

report of improvement in vertigo but unresolved disequilibrium, a treatment record

ORDER ~ 24

noting continued headaches, and a report of vertigo with neck stiffness. ECF No. 12 at 13 (citing Tr. 322, 410, 837, 926). However, the ALJ's decision includes consideration of the relevant evidence from the adjudicatory period, including her report of "occasional" vertigo symptoms, dizzy spells in the morning, and a single episode of vertigo while driving. Tr. 525. Moreover, regardless of evidence that could be interpreted more favorably to the Plaintiff, it was reasonable for the ALJ to conclude that ongoing evidence of improvement in Plaintiff's claimed impairments was inconsistent with her allegations of incapacitating limitations. *See Burch*, 400 F.3d at 679 (ALJ's conclusion must be upheld where evidence is susceptible to more than one rational interpretation). This was a clear and convincing reason, supported by substantial evidence, for the ALJ to discount Plaintiff's symptom claims.

### 3. Failure to Seek Treatment

Third, the ALJ found that Plaintiff's poor treatment history "further illustrate[s] that her symptoms and limitations may not have been as serious as she has alleged." Tr. 525. Unexplained, or inadequately explained, failure to seek or comply with treatment may be the basis for rejecting Plaintiff's symptom claims unless there is a showing of a good reason for the failure. *Orn*, 495 F.3d at 638; *see also Burch*, 400 F.3d at 680 (minimal objective evidence is a factor which may be relied upon in discrediting a claimant's testimony, although it may not be the only factor). First, in support of this finding, the ALJ noted that "[a]lthough [Plaintiff] alleged significant back pain due to degeneration, her allegations are out

ORDER ~ 25

of proportion to her treatment history.  Other than some essentially routine and

conservative treatment, such as physical therapy and pain medications, [Plaintiff]

had not received any surgery for her back condition." Tr. 525.  Plaintiff argues

that this reason is improper because although she was treated conservatively "at

first," she "ultimately had to undergo spinal surgery to treat her back pain."  ECF

No. 12 at 17; Tr. 969 (noting Plaintiff "had failed conservative measures and

therefore, it was elected to proceed with surgical intervention").  This argument is

inapposite.  Plaintiff's decision to undergo back surgery in 2019, almost three

years after her date last insured of December 31, 2016, has limited probative value

to considering the admittedly conservative nature of Plaintiff's treatment for back

and neck pain during the relevant adjudicatory period.  *See Parra v. Astrue*, 481

F.3d 742, 751 (9th Cir. 2007) (evidence of "conservative treatment" is sufficient to

discount a claimant's testimony regarding the severity of an impairment).

Second, the ALJ noted that Plaintiff testified at the January 2020 hearing

that she had not seen a health care provider for three and a half months and was not

scheduled to see one until March 2020, and found that "[g]iven the alleged

frequency and severity of the vertigo, one would expect [Plaintiff] to make more

effort in seeking more treatment for the condition."  *See* Tr. 571.  Plaintiff argues

that she also testified this lack of treatment was due to a "lack of financial means,"

and "federal courts have consistently held that a [Plaintiff's] inability to afford

[treatment] should not be held against them when they are unable to obtain or

follow through with treatment."  ECF No. 12 at 17 (citing Tr. 579-80).  Pursuant to

ORDER ~ 26

Social Security Ruling 16-3p, an ALJ "will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints."  Social Security Ruling ("SSR") 16-3p at *8-*9 (March 16, 2016), *available at* 2016 WL 1119029 (directing the ALJ to consider Plaintiff's treatment history, including whether "[a]n individual may not be able to afford treatment").  However, it is unnecessary for the Court to consider whether the ALJ properly considered Plaintiff's reasons for not pursuing treatment as per her testimony at the 2020 hearing, because Plaintiff's alleged inability to pursue treatment almost three years after Plaintiff's date last insured of December 2016 does not rise to the level of substantial evidence to support rejection of Plaintiff's symptom claims during the relevant adjudicatory period.  However, any error is harmless because, as discussed herein, the ALJ's ultimate rejection of Plaintiff's symptom claims was supported by substantial evidence. *See Carmickle*, 533 F.3d at 1162-63.

### 4.  Daily Activities

Fourth, the ALJ found that Plaintiff's "reported activities of daily living and social interaction, . . . are inconsistent with her allegations of severely limiting physical symptoms."  Tr. 525-26.  A claimant need not be utterly incapacitated in order to be eligible for benefits. *Fair*, 885 F.2d at 603; *see also Orn*, 495 F.3d at 639 ("the mere fact that a plaintiff has carried on certain activities . . . does not in any way detract from her credibility as to her overall disability.").  Regardless,

ORDER ~ 27

1   even where daily activities "suggest some difficulty functioning, they may be

2   grounds for discrediting the [Plaintiff's] testimony to the extent that they contradict

3   claims of a totally debilitating impairment."  *Molina*, 674 F.3d at 1113.

4        In support of this finding, the ALJ noted that despite Plaintiff's allegations

5   that she could not go anywhere because of vertigo, and could not bend or look

6   down, Plaintiff also repeatedly reported that she was able to go shopping on good

7   days, prepare simple meals, feed her pets, do light cleaning and laundry, shop in

8   stores for groceries weekly, go to church occasionally, manage her own money,

9   watch television, read the Bible, and care for her grandson on a weekly basis

10  without assistance, "which can be quite demanding both physically and mentally."

11  Tr. 526 (citing Tr. 44-46, 210, 221, 247-48, 260-65, 377); *see also Rollins*, 261

12  F.3d at 857 (the ability to care for young children without help has been considered

13  an activity that may undermine claims of totally disabling impairment).  The ALJ

14  also noted that "in addition to activities of daily living, the [Plaintiff] had

15  performed work activities during the period at issue.  While [Plaintiff] reported

16  worsened vertigo symptoms since October 2013, [Plaintiff] stated that she worked

17  until May 2014 or July 10, 2014."  Tr. 526.

18       Plaintiff generally argues that this finding was improper because she "did

19  not testify that she was completely debilitated by her vertigo all day, every day;

20  rather, she testified that she had symptoms at least once a month that lasted

21  anywhere from two to three days to a week at a time."  ECF No. 12 at 18.  Plaintiff

    also contends that Plaintiff's work history was not a valid reason to discount

ORDER ~ 28

Plaintiff's symptom claims because she was only able to work 2-3 hours per day, 2-3 days per week, which does not qualify as substantial gainful activity.  ECF No. 12 at 18.  However, as noted by Defendant, it is proper for the ALJ to consider Plaintiff's ability to work during the relevant adjudicatory period, regardless of whether it rose to the level of substantial gainful activity.  ECF No. 14 at 15 (citing 20 C.F.R. § 404.1571 ("Even if the work you have done was not substantial gainful activity, it may show that you are able to do more work than you actually did.")); *see also Bray*, 554 F.3d at 1227 (the ability to work may be considered in assessing Plaintiff's symptom claims).  Moreover, it was reasonable for the ALJ to conclude that Plaintiff's documented activities, including driving, working part-time, and taking care of a child without assistance, was inconsistent with her allegations of entirely debilitating functional limitations.  *Molina*, 674 F.3d at 1113 (Plaintiff's activities may be grounds for discrediting Plaintiff's testimony to the extent that they contradict claims of a totally debilitating impairment).   This was a clear and convincing reason to discredit Plaintiff's symptom claims.

### 5.  Reasons for Stopping Work

Fifth, and finally, the ALJ noted that Plaintiff stated her vertigo symptoms had caused her to lose her job; however, "her employment security record and her testimony at the prior and current hearing indicate that she was fired from her last job for a reason not related to the allegedly disabling impairments, but due to an argument between her and her former employer on some unpaid commission money."  Tr. 526.  An ALJ may consider that a claimant stopped working for

ORDER ~ 29

1   reasons unrelated to the allegedly disabling condition when weighing the Plaintiff's

2   symptom reports. *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001).

3   Plaintiff failed to raise this issue with specificity in her opening brief. *Carmickle*,

4   533 F.3d at 1161 n.2 (court may decline to address issues not raised with

5   specificity in Plaintiff's opening brief). In her reply brief, Plaintiff contends that

6   the Defendant "failed to distinguish" between Plaintiff leaving her full-time job

7   due to her vertigo symptoms, and her testimony that her part-time job ended due to

8   a dispute with her employer. ECF No. 15 at 8-9.

9        However, the only evidence cited by Plaintiff in support of this argument is

10  her own testimony that her "reason for separation from employment" when she

11  applied for unemployment was that her "employer was trying to cheat [her] out of

12  the money that he owed [her] for [her] commissions." Tr. 39. The Court is unable

13  to discern any distinction between this testimony and the objective records cited by

14  the ALJ in support of her finding that Plaintiff separated from her employment for

15  reasons other than her allegedly disabling conditions. Tr. 526 (noting that her

16  previous employment ended "due to an argument between her and her former

17  employer on some unpaid commission money"). Based on the foregoing, the

18  Court finds it was reasonable for ALJ to discount Plaintiff's symptom claims based

19  on evidence she stopped working for reasons other than her claimed impairments.

20      The Court concludes that the ALJ provided clear and convincing reasons,

21  supported by substantial evidence, for rejecting Plaintiff's symptom claims.

**D. Lay Witness Evidence**

ORDER ~ 30

"In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006); *see also Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993) ("friends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to [his] condition."). To discount evidence from lay witnesses, an ALJ must give reasons "germane" to each witness. *Dodrill*, 12 F.3d at 919.

Here, Plaintiff's husband completed a third-party function report. Tr. 215. He reported that Plaintiff "becomes off balanced and dizzy" and has to lie down or sit; and she needs help walking when her vertigo is "up." Tr. 239-46. The ALJ considered this lay witness statement, but assigned it little weight for the same reasons the ALJ "determined that [Plaintiff's] statements regarding the severity of her symptoms are not consistent with the evidence (i.e., her longitudinal treatment history, the objective findings, her presentations at appointments and examinations, and her rather independent daily activities.)." Tr. 529. Where the ALJ gives clear and convincing reasons to reject a claimant's testimony, and where a lay witness's testimony is similar to the claimant's subjective complaints, the reasons given to reject the claimant's testimony are also germane reasons to reject the lay witness testimony. *See Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009); *see also Molina*, 674 F.3d at 1114 ("[I]f the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness"). Plaintiff argues that the ALJ's

ORDER ~ 31

reasons for rejecting Plaintiff's testimony were inadequate, and therefore her reasons for rejecting the lay witness statement were also inadequate.  ECF No. 12 at 19.  However, as discussed above, the ALJ gave clear and convincing reasons to reject Plaintiff symptom claims, and those same well-supported reasons for rejecting Plaintiff's subjective symptom claims are germane reasons to discount the lay witness evidence.

## E. Step Four

Finally, Plaintiff argues that the ALJ improperly rejected the opinions of Plaintiff's medical providers; thus, the ALJ erred at step four by posing an incomplete hypothetical to the vocational expert.  ECF No. 12 at 19.  Plaintiff is correct that "[i]f an ALJ's hypothetical does not reflect all of the claimant's limitations, the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy." *Bray,* 554 F.3d at 1228 (citation and quotation marks omitted).  However, as discussed in detail above, the ALJ's consideration of the medical opinion evidence, rejection of Plaintiff's symptom claims, and rejection of the lay witness testimony, was supported by the record and free of legal error.  The hypothetical posed to the vocational expert contained the limitations reasonably identified by the ALJ and supported by substantial evidence in the record.  Thus, the ALJ did not err at step four.

## CONCLUSION

A reviewing court should not substitute its assessment of the evidence for the ALJ's.  *Tackett*, 180 F.3d at 1098.  To the contrary, a reviewing court must

ORDER ~ 32

defer to an ALJ's assessment as long as it is supported by substantial evidence.  42

U.S.C. § 405(g).  As discussed in detail above, the ALJ properly weighed the

medical opinion evidence; did not err in developing the record; provided clear and

convincing reasons to discount Plaintiff's symptom testimony; properly considered

the lay witness statement; and did not err at step four.  After review, the Court

finds the ALJ's decision is supported by substantial evidence and free of harmful

legal error.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

    1.  Plaintiff's Motion for Summary Judgment, ECF No. 12, is **DENIED**.

    2.  Defendant's Motion for Summary Judgment, ECF No. 14, is

        **GRANTED**.

    The District Court Executive is hereby directed to enter this Order and

provide copies to counsel, enter judgment in favor of the Defendant, and **CLOSE**

the file.

    **DATED** June 2, 2021.


                  *s/ Rosanna Malouf Peterson*
                 ROSANNA MALOUF PETERSON
                  United States District Judge